UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-61998-CIV-DAMIAN

ADALIS MOLINA-BURSET,

        Plaintiff,

v.

PROFESSIONAL PARKING
MANAGEMENT CORPORATION,
YSA ARM LLC D/B/A OXYGEN XL, and
JOHN DOE,

        Defendants.

**DEFENDANTS' MOTION TO COMPEL ARBITRATION**

Defendants Professional Parking Management Corporation ("PPM") and YSA ARM LLC d/b/a Oxygen XL ("Oxygen") move to compel arbitration of this dispute, and to stay all proceedings in this action. This lawsuit arises from a contractual agreement between Plaintiff and PPM that requires any dispute between the parties related to the contract to be resolved exclusively by binding arbitration. PPM and Oxygen, therefore, move under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 3 and 4 or, alternatively, under the Florida Arbitration Code ("FAC"), Fla. Stat. § 682, et seq., to enforce the agreement and compel arbitration.

**INTRODUCTION**

PPM is in the business of operating parking lots. In July 2024, Plaintiff parked her vehicle in a private parking lot operated by PPM. At the entrance of the parking lot, a large sign is conspicuously posted. The contractual terms and conditions to which customers must agree in exchange for use of the parking lot are printed in large text on the sign ("Parking Contract"). One

of the terms of the Parking Contract is a requirement that the parties resolve all disputes related to the Parking Contract and use of the lot exclusively through binding arbitration. By parking her vehicle in the lot, Plaintiff agreed to the terms of the Parking Contract, including the arbitration provision.

After parking for a period of one hour and thirty-five minutes, Plaintiff departed the lot without making the required payment.[1] Subsequently, PPM issued a parking charge notice by mail to Plaintiff for her outstanding parking charges, as specifically contemplated by Fla. Stat. § 715.075. Plaintiff chose to pay the notice via PPM's online payment portal. Prior to making her online payment, Plaintiff was required to accept and agree to PPM's Terms of Service ("Terms") via a clickwrap agreement. By accepting the Terms, Plaintiff reaffirmed her agreement to the Parking Contract and, once again, agreed to resolve any claim that relates to the Parking Contract and her use of the lot exclusively through arbitration.

In total disregard of Plaintiff's obligation to exclusively arbitrate all such claims, Plaintiff has filed this action. As described herein, under the unambiguous arbitration provisions of the Terms and Parking Contract, this Court must compel the parties to arbitration and stay these proceedings pending the arbitration's conclusion.

**FACTUAL BACKGROUND**

PPM is in the business of operating parking lots. Parking lots operated by PPM may be used by the general public for an hourly and/or daily parking fee. ECF No. 1 (Complaint) at ¶¶ 4, 8-12.

---

[1] At the Parking Lot, customers can pay for parking through a payment kiosk, with vehicle entry and exit times tracked by automated cameras. ECF No. 1 at ¶ 17; *see also* ECF No. 1-3 (Parking Charge Notice depicting photographs of vehicle entry and exit).

While the great majority of individuals who park in lots operated by PPM pay without incident, a small percentage of drivers either park without paying at all or overstay their paid parking session. When customers either fail to pay or overstay their paid parking session, PPM issues a parking charge notice to them by mail pursuant to PPM's contractual parking terms and Florida law. Declaration of Frederick Bredemeyer ¶ 5, attached as Exhibit 1; *see also* Fla. Stat. § 715.075.

On July 13, 2024, Plaintiff parked at a parking lot operated by PPM that is located at 3160 NE 9th Street, Fort Lauderdale, Florida 33304 (the "Parking Lot"). Complaint ¶ 16; Ex. 1 ¶ 6; Ex. 1-B. After parking for a period of one hour and thirty-five minutes, Plaintiff departed the lot without making the required payment. Ex. 1 ¶ 6; Ex. 1-B; ECF No. 1-3 (recording entry and exit times and noting "NON-PAYMENT" as reason for charge).

When entering the Parking Lot, Plaintiff, like all other parkers, passed by a large blue and white sign. Ex. 1 ¶¶ 3-4; *see also* Ex. 1 ¶¶ 3-4; Ex. 1-A. The sign—which stands out because of its unique color—provides in large, bold, and capitalized font that users such as Plaintiff are entering into a "**PARKING CONTRACT.**" Ex. 1-A. While parkers are not forced to agree to the terms of the Parking Contract—and may exit if they do not wish to agree—the sign makes clear that by parking in the Parking Lot, users are agreeing to the terms. Specifically, the Parking Contract states: "**By parking or exceeding the 15-minute grace period,** you agree to the contract below. **Exit without parking if you do not agree to all terms.**" Ex. 1-A (emphasis in original). The Parking Contract further provides—in bold, capitalized, and underlined font—that "**FAILURE TO PAY, REGISTER, VALIDATE, ACCURATELY ENTER A LICENSE PLATE, OR OTHER TRESPASS OR RULE VIOLATION MAY RESULT IN A NOTICE OF NON-COMPLIANCE CHARGE OF $45 - $125 (CHARGE), TOWING, OR BOOTING.**

**UNPAID CHARGES MAY BE SUBJECT TO LATE FEES AFTER 30 DAYS, ASSIGNED TO DEBT COLLECTORS, OR LITIGATED**. **YOU, FOR YOURSELF AND OWNER, GRANT PPM PERMISSION TO OBTAIN INFORMATION TO IDENTIFY VEHICLE OWNER FOR ENFORCEMENT.**" Ex. 1-A.

The Parking Contract also includes an arbitration provision, which requires that:

> **ANY DISPUTE** between you or the Owner and PPM arising from or relating to this Contract, the lot, or PPM, including disputes over arbitrability or the scope, validity, and enforceability of this Contract, **SHALL BE RESOLVED EXCLUSIVELY BY BINDING ARBITRATION ON AN INDIVIDUAL BASIS**.

*Id*. (emphasis in original). The language that "*disputes over arbitrability or the scope, validity, and enforceability of this Contract*, SHALL BE RESOLVED EXCLUSIVELY BY BINDING ARBITRATION" is a clear delegation clause.

The parking charges referenced in the Parking Contract are issued pursuant to Florida law. Specifically, § 715.075 of Florida Statutes provides in relevant part:

> (1)(a) The owner or operator of a private property used for motor vehicle parking may establish rules and rates that govern private persons parking motor vehicles on such private property. Such rules and rates may include parking charges for violating the property owner's or operator's rules. The owner or operator of a private property used for motor vehicle parking must place signage that is legible and clearly visible to persons entering the area used for motor vehicle parking…

§ 715.075(1)(a), Fla. Stat. (2024).

Pursuant to this Florida statute and the Parking Contract, PPM issued a parking charge notice to Plaintiff for her use of the Parking Lot and her associated violation of the Parking Contract. Complaint. ¶ 18; Ex. 1 ¶ 6; Ex. 1-B.

After receiving the parking charge, Plaintiff chose to pay the notice via PPM's online payment portal. Complaint ¶ 61; Ex. 1 ¶ 7. When users such as Plaintiff access PPM's website to

pay outstanding parking charges, after entering the "Notice Number" or "Plate Number," the website displays details regarding the parking charge notice, along with the option to pay the notice via credit or debit card. In order to complete payment, users such as Plaintiff are required to click a box that states, "I agree to the Terms and Conditions & Privacy Policy" in order to process any payment. Ex. 1 ¶¶ 8-11. The Terms and Privacy Policy are hyperlinked to the text that appears, which is designated by blue font. If a user clicks on the blue, hyperlinked font, a window opens displaying the Terms and Privacy Policy for the user's review. Notably, it is only after checking the box that indicates agreement to the Terms that a payment can be made. Ex. 1 ¶¶ 8-11.

By submitting her payment, Plaintiff accepted and agreed to PPM's Terms, which include an express agreement to arbitrate (the "Arbitration Provision"). [2] Ex. 1 ¶¶ 8-11; Ex. 1-D. The language of the Arbitration Provision includes the same language used in the arbitration provision included in the Parking Contract. Specifically, the clear and broad Arbitration Provision requires any dispute to be resolved in arbitration:

> **ANY DISPUTE** between you or the Owner and PPM arising from or relating to this Contract, the lot, or PPM, including disputes over arbitrability or the scope, validity, and enforceability of this Contract, **SHALL BE RESOLVED EXCLUSIVELY BY BINDING ARBITRATION ON AN INDIVIDUAL BASIS**.

Ex. 1-A ¶ 5.

Additionally, by agreeing to the Terms online, Plaintiff reaffirmed the Parking Contract—and the arbitration provision therein—as the Terms also include a clause that states "…**YOU ARE REAFFIRMING AND RATIFYING YOUR AGREEMENT TO THE PARKING**

---

[2] As the language of the arbitration provisions in the Parking Contract and the Terms are substantially the same, the use of "Arbitration Provision" throughout this Motion is used to connote both provisions, unless specified otherwise.

**CONTRACT POSTED AT THE PPM MANAGED PARKING FACILITY, WHICH IS FULLY AND SPECIFICALLY INCORPORATED HEREIN**." Ex. 1 ¶¶ 8-11; Ex. 1-D (page 2).

By accepting the Parking Contract when she used the Parking Lot, and accepting the Terms when she made payment via PPM's online payment portal, Plaintiff unequivocally agreed to arbitrate all claims related to the Parking Contract and her use of the parking lot. Ex. 1 ¶¶ 4-11; Complaint ¶ 61. As such, arbitration is the only appropriate venue for the resolution of the instant dispute.

## ARGUMENT

Plaintiff agreed to resolve disputes exclusively through arbitration two separate times: first, when she accepted the Parking Contract by parking at the Parking Lot; and second, when she accepted the Terms before proceeding to make her online payment. Nevertheless, contrary to her obligation to arbitrate the dispute, Plaintiff filed this action. As arbitration of the instant dispute is mandated by the Terms and the Parking Contract, Plaintiff must be compelled to resolve the matter through arbitration.

### I.  Legal Standard

"Motions to compel arbitration are treated generally as motions to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1)." *Shea v. BBVA Compass Bancshares, Inc.*, No. 1:12-CV-23324-KMM, 2013 WL 869526, at *2 n.3 (S.D. Fla. Mar. 7, 2013) (Moore, J.) (quotation omitted). A motion to compel arbitration "mounts a factual attack, whereby the existence of subject matter jurisdiction in fact, irrespective of the pleadings, is challenged [and thus] the Court may consider evidence outside of the four-corners of the complaint. No presumption of truthfulness attaches to Plaintiff's allegations." *Farrell v. Aaron's,*

6

*Inc.*, No. 318CV01490J20JRK, 2019 WL 13262714, at *3 (M.D. Fla. May 16, 2019) (quoting *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)). A motion to compel arbitration "asserts that a provision of an extrinsic document, an arbitration clause contained within the body of a contract, deprives the court of its power to adjudicate the plaintiff's claims." *Shea*, 2013 WL 869526, at *2 n.3.

When a movant presents "a facially valid arbitration agreement, the burden is on the party opposing arbitration to demonstrate that the agreement is invalid, or the issue is otherwise non-arbitrable," because the "role of the courts is to rigorously enforce agreements to arbitrate." *Agostino v. Ally Fin. Inc.*, No. 8:18-CV-1202-T-36TGW, 2019 WL 13142893, at *4 (M.D. Fla. Jan. 29, 2019) (quoting *Hemispherx Biopharma, Inc. v. Johannesburg Consol. Invs.*, 553 F.3d 1351, 1366 (11th Cir. 2008)). The trial court must "weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Owings v. T-Mobile USA, Inc.*, 978 F. Supp. 2d 1215, 1222 (M.D. Fla. 2013) (quotation omitted). "[N]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Id*.

State law "generally governs whether an enforceable contract or agreement to arbitrate exists," but "federal policy favoring arbitration, however, is taken into consideration even in applying ordinary state law." *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1367–68 (11th Cir. 2005).

> II. **Plaintiff Agreed to Exclusively Resolve All Disputes Through Arbitration by (1) Accepting the Parking Contract Upon Parking in the Parking Lot, and (2) Accepting the Terms When Paying Her Notice Online**

Plaintiff agreed twice to exclusively resolve all disputes related to the Parking Contract and use of the Parking Lot by binding arbitration. First, Plaintiff accepted the Parking Contract and its Arbitration Provision through her use of the Parking Lot. Secondly, by clicking the box on PPM's website which indicated agreement to PPM's Terms, prior to paying the parking charge notice, Plaintiff accepted the Terms, which also reaffirmed the Parking Contract and restated her agreement to the Arbitration Provision.

The Terms and the Parking Contact contain substantially identical language under the heading "**ARBITRATION**" and state in pertinent part:

> Except for Appealed Charges, **ANY DISPUTE** between you or the Owner and PPM arising from or relating to this Contract, the lot, or PPM, including disputes over arbitrability or the scope, validity, and enforceability of this Contract, **SHALL BE RESOLVED EXCLUSIVELY BY BINDING ARBITRATION ON AN INDIVIDUAL BASIS**.

Ex. 1-A; Ex 1-D.

The Arbitration Provision is governed by the Federal Arbitration Act ("FAA"), which applies to any "written" "contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising . . . ." 9 U.S.C. § 2. The FAA governs any transaction that "in fact involve[s] interstate commerce." *Sims v. Clarendon Nat'l Ins. Co.*, 336 F. Supp. 2d 1311, 1316 (S.D. Fla. 2004) (internal quotations and brackets omitted); *Default Proof Credit Card Sys., Inc. v. Friedland*, 992 So. 3d 442, 444 (Fla. 3d DCA 2008) ("Federal law mandates that agreements and contracts containing arbitration provisions which involve interstate commerce fall within the scope of the FAA."). Here, the dispute involves interstate commerce because a Florida individual is making claims against Georgia and New York companies. *See* Compl. ¶¶ 3-5. Moreover, Plaintiff used a credit card to pay for these charges, thereby using the wires to cause interstate payments to be made. *Id.* at ¶ 16; Ex. 1-C. Finally, the Terms and Parking Contract both

8

provide that they are governed by the FAA. *See* Ex.1-D ("This Arbitration Agreement is made pursuant to a transaction involving interstate commerce, and shall be governed by the Federal Arbitration Act ('FAA'), 9 U.S.C. § § 1-16."); Ex. 1-A ("This Contract is governed by the Federal Arbitration Act."). From the plain text of both the FAA and the Arbitration Provision, it is clear that the FAA applies.

In the event this Court finds that the Arbitration Provision does not involve interstate commerce, which it should not, then the Florida Arbitration Code ("FAC") would govern. *See Visiting Nurse Ass'n of Fla., Inc. v. Jupiter Med. Ctr., Inc.*, 154 So. 3d 1115, 1124 (Fla. 2014); *see also* Ex 1-D ("To the extent that the FAA is deemed not to apply, the Florida Arbitration Code [] will apply."). Regardless of whether this Court applies the FAA or the FAC, however, the analysis remains the same. *See John B. Goodman Ltd. P'ship v. THF Const., Inc.,* 321 F.3d 1094, 1097 (11th Cir. 2003) ("The Florida Arbitration Code is substantially similar to the FAA . . ."*); Jupiter Medical Ctr., Inc.*, 154 So. 3d at 1125 ("[T]he FAC is not in conflict with the FAA.").

Under either the FAA or the FAC, "there are three elements for courts to consider in ruling on a motion to compel arbitration of a given dispute: (1) whether a valid written agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitration was waived." *Shotts v. OP Winter Haven, Inc.*, 86 So. 3d 456, 464 (Fla. 2011) (quoting *Seifert v. U.S. Home Corp.*, 750 So. 2d 633, 636 (Fla. 1999)). However, the court may not analyze the second factor where, as here, arbitrability is delegated to the arbitrator. *See Reunion W. Dev. Partners, LLLP v. Guimaraes,* 221 So. 3d 1278, 1280 (Fla. 5th DCA 2017) ("While arbitrability is generally an issue for trial courts to decide, courts must delegate the authority to the arbitrator if the parties' contract so provides.").

Here, each of the elements supports compelling arbitration as agreed to by the Parties. As to the first element, Plaintiff agreed twice to a valid and binding Arbitration Provision, satisfying this requirement. Second, the question of whether an arbitrable issue exists is delegated to the arbitrator under the terms of the Arbitration Provision. Third, Defendants have not waived their right to demand arbitration.

> 1. **The Parties Entered into a Valid Written Agreement to Arbitrate**
>
>    a. **Plaintiff Accepted the Terms of Service by Actively Acknowledging Her Agreement on PPM's Online Payment Portal**

When Plaintiff paid her outstanding parking charge notice via PPM's online payment portal, she actively acknowledged acceptance of the Terms, which included the Arbitration Provision. At that time, prior to submitting her payment, Plaintiff had to check a box stating, "I agree to the Terms and Conditions & Privacy Policy." Ex. 1 ¶¶ 8-11.

"As Florida courts have recognized, there are two main types of internet contracts, click-wrap agreements and browsewrap agreements." *Bell v. Royal Seas Cruises, Inc.*, No. 19-CV-60752, 2020 WL 5742189, at *5 (S.D. Fla. May 13, 2020) (citing *MetroPCS Commc'ns, Inc. v. Porter*, 273 So. 3d 1025, 1028 (Fla. 3d DCA 2018)), *report and recommendation adopted*, No. 19-CIV-60752-RAR, 2020 WL 5639947 (S.D. Fla. Sept. 21, 2020).[3] "In Florida and the federal

---

[3] "A 'clickwrap' agreement occurs when a website directs a purchaser to the terms and conditions of the sale and requires the purchaser to click a box to acknowledge that they have read those terms and conditions." *Bell*, 2020 WL 5742189, at *5. "A 'browsewrap' agreement occurs when a website merely provides a link to the terms and conditions and does not require the purchaser to click an acknowledgement during the checkout process. The purchaser can complete the transaction without visiting the page containing the terms and conditions." *Id.* Nevertheless, browsewrap agreements are enforceable as long as the user has actual knowledge of the terms or "the hyperlink to the terms and conditions is conspicuous enough to put a reasonably prudent

10

circuits … clickwrap and browsewrap agreements are valid and enforceable contracts." *Kipu Sys., LLC v. ZenCharts, LLC*, No. 17-24733, 2019 WL 7371879 (S.D. Fla. Oct. 16, 2019) (quoting *Bachewicz v. JetSmarter, Inc.*, No. 18-CV-62570, 2019 WL 1900332, at *2 (S.D. Fla. Apr. 29, 2019)).

In *Valiente v. StockX, Inc.*, the court analyzed whether a plaintiff agreed to arbitrate his claims after entering into a clickwrap agreement on the defendant's website. 645 F. Supp. 3d 1331, 1337-39 (S.D. Fla. 2022). The defendant's website required users to enter their name, email address, and password information, and before being able to proceed, required users to click a box next to the statement, "By signing up, you agree to the Terms of Service and Privacy Policy." *Id.* The defendant argued that when the plaintiff created his account with StockX, after submitting his information, he "needed to affirmatively click a box indicating that he agreed to Defendant's Terms and Privacy Policy." *Id.* at 1338. The court granted the defendant's motion to compel and found that there was a valid and enforceable clickwrap agreement containing the terms and arbitration provision, as the plaintiff "could not use defendant's services without becoming a member by clicking through a screen notifying her of the defendant's membership agreement and terms and consenting to be bound by them." *Id.* (citing *Bachewicz*, 2019 WL 1900332, at *3).

The same is applicable here. Plaintiff could not submit her payment on PPM's website without checking the box next to the statement "I agree to the Terms and Conditions & Privacy Policy." Ex. 1 ¶¶ 8-11. By clicking on the box before submitting her online payment, Plaintiff assented to the Terms and the Arbitration Provision included therein. *See StockX, Inc.*, 645 F. Supp. at 1338; *see also Barney v. Grand Caribbean Cruises, Inc.*, No. 21-CV-61560-RAR, 2022 WL

---

person on inquiry notice." *Arencibia v. AGA Serv. Co.*, 533 F. Supp. 3d 1180, 1189–90 (S.D. Fla. 2021), *aff'd*, No. 21-11567, 2022 WL 1499693 (11th Cir. May 12, 2022).

159567, at *5 (S.D. Fla. Jan. 17, 2022) ("The checkbox accompanies the statement, which specifically includes language indicating that the user 'agree[s] to the Privacy Policy and Terms & Conditions.' Thus, there is an explicit textual notice that checking the box will act as a manifestation of an intent to be bound."). Thus, there is an enforceable agreement to arbitrate that satisfies the first element this Court must consider.

### b. Plaintiff Consented to the Conspicuously Posted Parking Contract by Parking in the Parking Lot

In addition, the Parking Contract provides that use of the Parking Lot constitutes acceptance of the Parking Contract and its terms. Specifically, the Parking Contract states: "**By parking or exceeding the 15-minute grace period**, you agree to the contract below. **Exit without parking if you do not agree to all terms**." Ex. 1-A. Further, Section 1 of the Parking Contract states "**You, on behalf of yourself and the vehicle owner (Owner), enter this contract (Contract) for parking with Professional Parking Management (PPM).**" Ex. 1-A.

Here, Plaintiff indisputably parked in the Parking Lot. Ex. 1 ¶¶ 6-7; Ex. 1-B; Ex. 1-C; *see also* ECF No. 1 ¶ 16. As a result, Plaintiff accepted the Parking Contract, including the Parking Contract's Arbitration Provision, through the use of the Parking Lot, and thereby entered into a valid agreement to arbitrate "**ANY DISPUTE** between you or the Owner and PPM arising from or relating to this Contract, the lot, or PPM[.]" Exhibit 1-A.

It is irrelevant that Plaintiff never *signed* the Agreement. A person "who sees apples offered for 50 cents apiece and takes an apple, owes 50 cents, regardless whether he did or did not say, 'I agree.'" *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 403 (2d Cir. 2004); *see* Restatement (Second) of Contracts § 69(1)(a) (1981) ("silence and inaction operate as an acceptance ... [w]here an offeree takes the benefit of offered services with reasonable opportunity to reject them and

reason to know that they were offered with the expectation of compensation."); 2 R. Lord, Williston on Contracts § 6:9 (4th ed. 1991) ("[T]he acceptance of the benefit of services may well be held to imply a promise to pay for them if at the time of acceptance the offeree has a reasonable opportunity to reject the service and knows or has reason to know that compensation is expected."); A. Corbin, Corbin on Contracts § 71 (West 1 vol. ed. 1952) ("The acceptance of the benefit of the services is a promise to pay for them, if at the time of accepting the benefit the offeree has a reasonable opportunity to reject it and knows that compensation is expected.").

In Florida as elsewhere, "by accepting benefits pursuant to contract a party is estopped from questioning the validity and effect of the contract." *Stevenson v. Stevenson*, 661 So. 2d 367, 369 (Fla. 4th DCA 1995); (quoting *Scocozzo v. General Dev. Corp.*, 191 So. 2d 572, 579 (Fla. 4th DCA 1966)). This case is no different. Plaintiff could have opted to park somewhere else, but she voluntarily proceeded to park in the Parking Lot, thus consenting to the Parking Contract, including the Arbitration Provision.

### 2. The Question of Arbitrability Is Delegated to the Arbitrator

The Arbitration Provision provides that "*disputes over arbitrability* or the scope, validity, and enforceability of this Contract, **SHALL BE RESOLVED EXCUSIVELY BY BINDING ARBITRATION ON AN INDIVIDUAL BASIS**." *See* Ex. 1-A (emphasis in italics). Here, by giving the arbitrator exclusive authority to determine "disputes over arbitrability or the scope, validity, and enforceability of this Contract," the Parties have delegated the issue of arbitrability to the arbitrator. *See Dunn v. Glob. Tr. Mgmt., LLC*, No. 21-10120, 2024 WL 4379966, at *8 (11th Cir. Oct. 3, 2024) (the delegation clauses stated "*any issue concerning the validity, enforceability, or scope* of this Account or the Arbitration Agreement" is a dispute subject to arbitration, and the Court found that "the plain language of the[se] relevant delegation provisions explicitly

delegate[d] questions of enforceability to an arbitrator") (emphasis added).  Accordingly, this Court must leave the resolution of the question of whether an arbitrable issue exists to the arbitrator.

### 3. PPM and Oxygen Have Not Waived Their Right to Demand Arbitration

PPM and Oxygen have not waived their right to demand arbitration.  Waiver occurs only if a party "take[s] an active part in the litigation or [] undertak[es] an action inconsistent with that right [to arbitration]." *Coral Associates v. Chino Elec. Inc.*, 501 So. 2d 69, 70 (Fla. 3d DCA 1987); *Krinsk v. SunTrust Banks, Inc.*, 654 F.3d 1194, 1201 (11th Cir. 2011) ("[A] party that substantially invokes the litigation machinery prior to demanding arbitration may waive its right to arbitrate.") (citations omitted). Here, neither PPM nor Oxygen have substantially invoked the litigation machinery.  To the contrary, PPM and Oxygen's first substantive act in this litigation has been to move to compel arbitration.  Therefore, there is no basis to find that PPM or Oxygen waived their right to demand arbitration.

### III. Plaintiff Must Also Arbitrate Her Claims Against Oxygen and "John Doe" Because They Are "Inextricably Intertwined" with and "Mirror" Her Claims Against PPM

Unlike PPM and Plaintiff, Defendants Oxygen and John Doe are not parties to the Terms or Parking Contract.  However, non-parties, whose claims are "inextricably intertwined" with or "mirror" the claims against a contracting party, may nonetheless compel arbitration. *See*, *e.g.*, *Escobal v. Celebration Cruise Operator, Inc.*, 482 F. App'x 475, 476 (11th Cir. 2012); *Herrera v. W. Flagler Assocs., Ltd.*, No. 17-20872-CIV, 2017 WL 9324515, at *5 (S.D. Fla. Apr. 5, 2017).  A non-party can also compel arbitration when they are alleged to have engaged in "interdependent and concerted misconduct" with the party defendant. *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d

14

942, 947 (11th Cir. 1999); *see also Stocky's LLC v. AG Composites LLC*, No. 18-80936-CIV, 2018 WL 11459531, at *6 (S.D. Fla. Oct. 17, 2018); *Herrera*, *supra*; *Spurgeon v. Marriott Int'l, Inc.*, No. 16-24612-CIV, 2017 WL 896301, at *7 (S.D. Fla. Mar. 7, 2017). Both doctrines apply here.

In *Escobal*, a seaman sued his employer and another company ("Cruise Line") for an injury he sustained while working on a cruise ship. 482 F. App'x at 476. His employment contract required arbitration of any disputes with his employer. *Id.* He argued he should not be required to arbitrate his claims against Cruise Line, which was not a party to the contract. *Id.* The district court held otherwise, and the Eleventh Circuit affirmed, because "Escobal's claim against Cruise Line is inextricably intertwined with his claims against the contract signatory [and thus] the district court properly applied equitable estoppel in requiring Escobal to arbitrate his claim against Cruise Line." *Id.*; *see also*, *Spurgeon*, *supra*, 2017 WL 896301, at *7; *Dimattina Holdings, LLC v. Steri-Clean, Inc.*, 195 F. Supp. 3d 1285, 1292 (S.D. Fla. 2016); *Navarette v. Silversea Cruises Ltd.*, No. 14-CV-20593, 2014 WL 11444106, at *1 (S.D. Fla. July 18, 2014) ("When claims against signatories and non-signatories are intertwined, a signatory plaintiff to an arbitration clause may be required to arbitrate its claims against a non-signatory"); 1 T. Oehmke, Commercial Arbitration § 8:33 (June 2023 update).

The foregoing rules apply in the instant case. Plaintiff's claims against Oxygen and John Doe are both intertwined with her claims against PPM. The claims against all three Defendants arise out of the exact same facts – Plaintiff's use of the Parking Lot and Defendants' sending of parking charge notices and follow-up letters in response to Plaintiff's failure to pay for her use of the Lot. Complaint ¶¶ 13-60.

Similarly, the rule for "interdependent and concerted misconduct" allegations also applies here. For PPM and John Doe, not only does Plaintiff assert liability against both defendants in

15

Count 1 of the Complaint (for Violation of Fla. Stat. § 559.72(9) against both PPM and John Doe), but Plaintiff also specifically alleges that "as the owner of the Parking Lot and having intentionally contracted with PPM for the operation thereof on its (JD's) behalf, JD is vicariously liable for PPM's violation … [a]s such, JD and PPM violated § 559.72(9) […]" Complaint ¶ 66.  Further, the purported liability of one defendant turns on alleged conduct of the other.  *See* Complaint ¶ 37 (PPM "transmitted to Oxygen XL the highly restricted personal information it (PPM) unlawfully obtained from Molina-Burset by scanning her license plate."); and Complaint ¶ 15 ("PPM collects the debts owed to JD by consumers for the consumers' alleged use of the Parking Lot"); *see also Moore v. A- Team Trappers, L.L.C.*, No. 23-CV-60441-RAR, 2023 WL 4846598, at *4 (S.D. Fla. July 28, 2023) (holding non-signatory agent may invoke arbitration provision when complaint raises allegations of substantially interdependent and concerted misconduct between agent and signatory principal).  Under *Escobal* and the foregoing authorities, the "inextricably intertwined" and "concerted misconduct" rules both squarely apply to Oxygen and John Doe.  Accordingly, Plaintiff must be compelled to arbitrate her claims against Oxygen, John Doe, and PPM.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request an order compelling arbitration and staying these proceedings pending the completion of the arbitral process.  *See* 9 U.S.C. § 3 ("If any suit . . . be brought . . . upon any issue referable to arbitration . . . the court in which the suit is pending . . . shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement."); *see also* § 682.03(7), Fla. Stat. ("If the court orders arbitration, the court on just terms shall stay any judicial proceeding that involves a claim subject to the arbitration.").

## **CERTIFICATE OF CONFERRAL**

In accordance with Local Rule 7.1(a)(2), the Parties conferred via e-mail with respect to the relief Defendants request herein. Plaintiff opposes the requested relief.

Date: January 13, 2025

                                              Respectfully submitted,

                                              /s/ *Colleen Smeryage*
                                              Colleen Smeryage, Esq.
                                              FREEDMAN NORMAND FRIEDLAND LLP
                                              1 SE 3rd Ave., Suite 1240
                                              Miami, FL 33131
                                              (786) 924.2900
                                              csmeryage@fnf.law

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed electronically with the Clerk of Court for the Southern District of Florida, and it is also being served on all counsel of record by using the CM/ECF system on January 13, 2025.

/s/ *Colleen Smeryage*
Colleen Smeryage, Esq.